Mitchell KALWASINSKI,
Plaintiff–Appellant,

v.

R. MORSE, Dep. Supt. of Security; D. Reynolds, Correction Captain; Hazelton, Correction Lieutenant; D. Ryan, Correction Lieutenant; C. Wood, Disciplinary Secretary; R. Serio, Senior Correction Counselor; J. Meck, Inmate Grievance Supervisor; D. Goodwin, Registered Nurse; C. Felker, Registered Nurse; R. Edwards, Correction Sergeant; D. Shaw, Correctional Sergeant; M. Madowiec, Correction Officer, Defendants–Appellees.

No. 99–0142.

United States Court of Appeals,
Second Circuit.

Submitted: Nov. 10, 1999.

Decided: Dec. 22, 1999.

---

Mitchell Kalwasinski, pro se.

Victor Paladino, Assistant Attorney General, State of New York, Albany, N.Y. (Eliot Spitzer, Attorney General, State of New York, Peter H. Schiff, Deputy Solicitor General, State of New York, of counsel), for Defendants–Appellees Morse, Cerio, and Goodwin.

Before: CARDAMONE, SOTOMAYOR, and KATZMANN, Circuit Judges.

PER CURIAM.

In April 1996, Mitchell Kalwasinski, proceeding *pro se*, brought an action pursuant to 42 U.S.C. § 1983, charging several officials and employees of the New York State Department of Correctional Services ("DOCS") at the Southport Correctional Facility ("Southport")[1] with various violations of his constitutional rights. In March 1999, after the claims against all other named defendants had been dismissed by orders not appealed from here, the district court (Feldman, M.J.) denied Kalwasinski's motion for summary judgment and awarded summary judgment to Richard Cerio,[2] David Goodwin, and Richard Morse, defendants-appellees here.[3] Kalwasinski, continuing *pro se*, appeals.

### BACKGROUND

On October 5, 1995, Sgt. R. Edwards, in the course of his duties at Southport, noticed that Kalwasinski's prison cell was entirely obscured by a blanket, in violation of prison regulations. In a misbehavior report filed that day, Edwards stated that Kalwasinski refused to remove the blanket and that when he confiscated the blanket, Kalwasinksi became angry, tauntingly exposed himself, and directed threatening words and gestures at Edwards and two corrections officers, Ameigh and Burgett, present at the scene. Edwards' report charged Kalwasinski with creating a disturbance, verbal harassment, refusing a direct order, threats, lewd exposure, and obstructing the visibility of his cell. On October 24, 1995, a disciplinary hearing conducted by Cerio commenced with respect to these charges. Sgt. Edwards and Officer Ameigh testified at the hearing, as did Mike Coleman, an inmate present in a cell near Kalwasinski's at the time the incident occurred; Kalwasinski also spoke in his own defense. On November 1, 1995, Cerio found Kalwasinski guilty of all charges and set the primary penalty as 180 days confinement in a Special Housing Unit ("SHU").

In his § 1983 action, Kalwasinski claimed, among other things, that Cerio deprived him of his due process rights at the hearing. In addition, Kalwasinski accused Goodwin, a registered nurse employed at Southport, with violating his Eighth Amendment rights by delaying return of his eyeglasses, which he had submitted (through another nurse) to Goodwin for repair. Kalwasinski also accused Richard Morse, the Deputy Superintendent of Security at Southport, of violating his rights in issuing certain deprivation orders against him.[4] In an unreported decision dated March 19, 1999, the district court awarded summary judgment to all three of these defendants.

### DISCUSSION

■ An award of summary judgment is subject to *de novo* review. *See Arce v. Walker*, 139 F.3d 329, 334 (2d Cir.1998) (citation omitted). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

We affirm the award of summary judgment to Nurse Goodwin and to Deputy Superintendent Morse substantially for the

1. While all of Kalwasinski's complaints relate to his period of incarceration at Southport, at the time of filing his appellate brief, he was incarcerated at the Elmira Correctional Facility.

2. Cerio's name is misspelled as "Serio" in the Complaint and in the caption.

3. Co-defendants Hazelton and Reynolds apparently have never been served with process and so have not answered or appeared in this action.

4. This was the charge against Morse that was addressed at summary judgment. In his complaint, Kalwasinski asserted that Morse was "responsible for disciplinary action taken against him," and that Morse "took no actions against [other] defendants."

reasons set forth in the district court's Decision and Order dated March 19, 1999. We also affirm the judgment in favor of Hearing Officer Cerio on the ground that Kalwasinski received due process during his disciplinary hearing. We find it important, however, to express our disagreement with the district court's application of *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), in this case.

■ The district court held that under *Sandin,* Kalwasinski did not have a constitutionally protected liberty interest at stake at his disciplinary hearing. On the basis of its knowledge of the conditions of SHU confinement, derived from evidence presented in one of its prior cases, *McClary v. Kelly,* 4 F.Supp.2d 195 (W.D.N.Y.1998) (Feldman, M.J.), and after review of district court cases upholding SHU confinement of similar duration, the court, without reference to the circumstances of SHU confinement in this case, concluded that Kalwasinski's 180 days confinement in the SHU was not an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *See Sandin,* 515 U.S. at 484, 115 S.Ct. 2293. Such disregard of the actual circumstances of SHU confinement here was an improper application of *Sandin.*

In the wake of *Sandin,* we have consistently reminded the district courts that "[i]n order to determine whether a liberty interest has been affected, district courts are required to examine the circumstances of a confinement and to identify with specificity the facts upon which [their] conclusion[s][are] based." *Wright v. Coughlin,* 132 F.3d 133, 137 (2d Cir.1998) (citing *Sealey v. Giltner,* 116 F.3d 47, 52 (2d Cir.1997); *Brooks v. DiFasi,* 112 F.3d 46, 49 (2d Cir.1997); *Miller v. Selsky,* 111 F.3d 7, 9 (2d Cir.1997)). Moreover, we have remanded cases to the district courts for further proceedings in accordance with these instructions. *See, e.g., Branham v. Meachum,* 77 F.3d 626, 630 (2d Cir.1996) (vacating, in part, and remanding to afford plaintiff opportunity to allege facts to support a liberty interest under *Sandin* ); *Samuels v. Mockry,* 77 F.3d 34, 38 (2d Cir.1996) (remanding for further fact-finding in accordance with *Sandin* ).

Once again, after the district court's Decision and Order was filed in this case, our Court issued an opinion in *Welch v. Bartlett,* 196 F.3d 389, 391 (2d Cir.1999), reminding the district court of the proper inquiry it must undertake in determining whether SHU confinement can constitute such an "atypical and significant hardship" as to give rise to a constitutionally protected liberty interest under *Sandin* and remanding for further proceedings. In *Welch,* we found that, given the record before the district court, we could not affirm the district court's holding that a penalty of 90 days confinement in SHU did not implicate a constitutionally protected liberty interest. *Id.* at 394 Although we did not rule out the possibility that on remand, summary judgment might still be awarded to defendants on the *Sandin* issue, we found the district court's findings deficient with respect to both the conditions and the duration of inmate Welch's SHU confinement. *Id.* at 393, 394 n. 3.

In the unreported decision reviewed in *Welch,* the district court concluded that the conditions of SHU confinement, despite involving cell confinement of 23 hours per day and inability to participate in out-of-cell programs, did not represent an "atypical and significant hardship." This conclusion was based, in large part, on the court's findings that inmates in general population quarters were confined to their cells for about half a day and at times, experienced restrictions and interruptions in their participation in out-of-cell programs when, for example, they were transferred to other correctional facilities. Our Court found this analysis deficient and misdirected in several respects. The district court in *Welch* did not appreciate the significant difference in the length of daily cell confinement of SHU prisoners, i.e., 23 hours a day, as compared to those in general population, i.e., half the day. *Id.* Also,

notwithstanding the district court's general observation as to possible interruptions in program participation for prisoners in general population, it made no finding as to the regularity and severity of such interruptions. Such a finding is necessary under *Sandin* in order to compare the deprivations endured by inmates in punitive SHU confinement to deprivations endured by other inmates.[5] *Id.*

Furthermore, we noted that the frequency and duration of SHU confinement of prisoners is "highly relevant" to whether SHU confinement is atypical of the prison experience, but we cautioned that merely calculating the percentage of prisoners sentenced to SHU confinement, as the district court did in *Welch*, does not measure the likelihood that an inmate will endure comparable deprivation in the ordinary administration of prison life. *Id.* Moreover, in undertaking a *Sandin* review of the duration of a particular sentence, the relevant comparison is not to the SHU sentences of other prisoners, but to periods of comparable deprivation suffered by other prisoners in the ordinary course of prison administration. *Id.*

In the decision reviewed here, the district court surveyed other decisions holding that periods of SHU confinement similar in duration to Kalwasinski's did not implicate a liberty interest and therefore concluded that Kalwasinski's SHU penalty did not implicate a liberty interest either. As noted in *Welch,* however, the essential comparison is not to other terms of punitive SHU confinement. Rather, the district court must consider the "periods of comparable deprivation typically endured by other prisoners in the ordinary course of prison administration, including general population prisoners and those in various forms of administrative and protective custody."[6] *Id.*

Here, the district court merely noted that it was "fully aware of" the basic conditions of SHU confinement and referenced its opinion in *McClary v. Kelly,* 4 F.Supp.2d 195. In *McClary,* the court, after a hearing conducted over several days, made extensive findings of fact with respect to the conditions of SHU confinement (whether administrative or punitive)[7] and to conditions experienced by general population prisoners in maximum security facilities. *Id.* at 202–11. The district court had the benefit of extensive evidence relating specifically to at least two of the four institutions in which inmate McClary had been administratively segregated. *Id.* at 203–05, 209. In the decision below, however, the court did not refer to any evidence adduced by the parties specifically relating to conditions at Southport or at the institution to which Kalwasinski was transferred.[8] The court was thus not in a position to compare conditions of punitive

5. We also noted that the record before the district court contained no rebuttal to inmate Welch's affidavit attesting to serious deprivations in the conditions of hygiene in the SHU, as compared to hygiene conditions in general population. *See Welch,* 196 F.3d 389, 392–93.

6. We recently noted in *Sealey v. Giltner,* 197 F.3d 578, 589 (2d Cir.1999), that "[t]he relevant comparison in this Circuit has not been definitively settled," but we further noted that our decisions in *Welch,* 196 F.3d at 394, and *Brooks,* 112 F.3d at 48, indicate that the district courts should compare conditions of SHU confinement with conditions in both the general population and administrative confinement.

7. In *Welch* and in the decision reviewed here, punitive SHU confinement was at issue. Of course, when a challenge is made to non-punitive administrative segregation, adjustments must be made in making the pertinent comparisons.

8. In *McClary,* the court discussed extensive testimony relating to Attica and Wende. *See McClary,* 4 F.Supp.2d at 203–05, 209. Southport was one of the facilities at which McClary was administratively segregated, and the court found that the conditions of SHU confinement at the institutions where McClary was administratively segregated were "indistinguishable" for purposes of *Sandin. Id.* at 203. The court's opinion does not note any specific evidence relating to Southport, however.

SHU confinement to conditions in the ordinary administration of the prisons in question.[9]

We therefore reject the district court's *Sandin* analysis and, again, advise district courts confronting this issue to conduct their *Sandin* analysis in accordance with *Welch* and our prior decisions consistent therewith.[10]

Although we cannot agree with the district court's *Sandin* analysis, we nevertheless concur that Cerio did not deprive Kalwasinski of his right to due process. Because we affirm the judgment on that basis, we address this matter in some detail.

■ As the Supreme Court has held, due process requires that in a disciplinary hearing resulting in imposition of loss of good time credits or solitary confinement, an inmate must be afforded advance written notice of the charges against him and a written statement of fact findings supporting the disposition and reasons for the disciplinary action taken. *See Wolff v. McDonnell,* 418 U.S. 539, 563–64, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Subject to legitimate safety and correctional goals of the institution, an inmate should also be permitted to call witnesses and present documentary evidence. *Id.* at 566, 94 S.Ct. 2963. This Court has held that *Wolff*'s protections apply to an inmate facing SHU confinement and that an inmate has a right to a fair and impartial hearing officer. *See McCann v. Coughlin,* 698 F.2d 112, 121–22 (2d Cir.1983). In addition, the Supreme Court has held that a hearing disposition must be supported by at least "some evidence." *See Superintendent v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).

## A. Advance Written Notice of the Charges

■ Kalwasinksi admitted that he received written notice of the charges against him on October 6, 1995, eighteen days before the hearing commenced and well in excess of the 24–hour minimum period required by *Wolff. See* 418 U.S. at 564, 94 S.Ct. 2963. He complains, however, that the notice included a charge that he verbally threatened to kill Edwards and the other officers present, but at the hearing, Edwards testified that during the incident, Kalwasinski did not threaten to kill anyone. However, Edwards testified that Kalwasinksi did verbally threaten him and the other officers with physical harm—if not, killing—during the incident in question. The advance written statement put Kalwasinski on notice that he was charged, among other things, with making verbal threats against the officers. The discrepancy as to the precise nature of the threatened harm did not represent a failure of specificity that would impair Kalwasinski's ability to prepare his defense, especially since his defense was simply that Edwards' entire report was a fabrication. *Cf. Benitez v. Wolff,* 985 F.2d 662, 665 (2d Cir.1993). Accordingly, we conclude that the advance written notice provided to Kalwasinski was not constitutionally deficient.

## B. The Right to Call Witnesses

■ Kalwasinski requested that Sgt. Edwards, Officer Ameigh, and inmate Mike Coleman be called as witnesses. Edwards and Ameigh testified by speaker phone during the hearing, and Kalwasinksi put questions to them. Coleman was at another facility at the time of the hearing and his tape-recorded testimony responding to questions put to him by Cerio was

---

**9.** We note also that *Sandin* analysis of the conditions of SHU confinement is made more difficult when, as here, the inmate has been transferred to a different facility from the one in which his disciplinary penalty was imposed and the confinement is scheduled to begin at some future date.

**10.** The district court may wish to consider assisting plaintiff in seeking pro bono counsel. *See Welch,* 1999 WL 1034224, at *5.

played at the hearing. Kalwasinski complains that he was not permitted to ask questions of Coleman. However, Cerio explained to Kalwasinski at the hearing that he asked Coleman the question Kalwasinski requested and Coleman answered this question, stating what he witnessed of the incident. It is not a violation of due process at a disciplinary hearing to take the testimony of a witness outside the presence of an inmate. *See Francis v. Coughlin*, 891 F.2d 43, 48 (2d Cir.1989) (citing *Bolden v. Alston*, 810 F.2d 353, 358 (2d Cir.1987)). Nor does an inmate have a constitutional right of confrontation. *See Silva v. Casey*, 992 F.2d 20, 22 (2d Cir. 1993) (citing *Wolff*, 418 U.S. at 567–68, 94 S.Ct. 2963).

■ Kalwasinski also complains that Cerio did not call fourteen other Southport employees whose testimony he requested. However, a hearing officer does not violate due process by excluding irrelevant or unnecessary testimony. *See Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir. 1991) (citations omitted). Edwards testified that no officers other than Ameigh and Burgett were present at the incident, thus providing Cerio with a rational basis for concluding that the testimony of these additional witnesses would be irrelevant or unnecessary. *See Scott v. Kelly*, 962 F.2d 145, 147 (2d Cir.1992) (citing *Kingsley*, 937 F.2d at 30). Cerio explained this to Kalwasinski at the time of the hearing.

In light of the above, we conclude that Cerio's refusal to call the additional witnesses requested by Kalwasinski did not constitute a violation of due process.

### C. Statement of Evidence and Reasons for the Disposition

■ At the hearing, Sgt. Edwards' October 5, 1995 misbehavior report was read into the record and Cerio heard the testimony of Edwards and Ameigh, supporting each of the charges against Kalwasinski. Cerio also played Coleman's taped testimony, which did not contradict any material evidence presented by the officers. We conclude that sufficient evidence was presented at the hearing to support each of the charges on which Kalwasinksi was found guilty. *See Hill*, 472 U.S. at 455, 105 S.Ct. 2768.

We also note that, in accordance with due process, a written report prepared by Cerio, stating the evidence on which he relied and the reasons for the disposition, was presented to Kalwasinski on November 1, 1995.

### D. The Right to a Fair and Impartial Hearing Officer

■ Finally, Kalwasinski complains that Cerio "utilized confidential information" in arriving at his disposition. Kalwasinski's brief does not explain the basis for this accusation. At his hearing, Kalwasinski complained that a written request by certain Southport personnel for postponement of the hearing contained allegations that he had made numerous threats to kill Southport staff. Kalwasinski asked Cerio to inquire as to the source of these accusations and Cerio did so. Cerio told Kalwasinski that the basis for the allegations was another misbehavior report filed against him, and he assured Kalwasinski that this other report was not material to the charges Cerio had to consider. Cerio's ultimate finding that Kalwasinski had made threats during the October 5, 1995 incident was supported by Edwards' testimony to that effect. We conclude that Cerio's conduct in this regard was consistent with due process.[11]

We have reviewed all other complaints made by Kalwasinksi relating to Cerio's conduct of the disciplinary hearing and find them to be without merit. The evi-

---

11. Kalwasinksi also accuses Cerio of being a "liar" and a "racist coward." Upon review of the disciplinary hearing minutes and of the documents prepared by Cerio for presentation to Kalwasinski after the hearing, we find these charges to be completely without foundation.

dence in the record shows that Kalwasinksi was not denied due process at the hearing. On this basis we affirm the award of summary judgment to Cerio.

Kalwasinksi also appeals the denial of a motion he made for additional discovery, arguing that this discovery would have produced evidence with respect to his claims against Goodwin and Cerio. Given the nature of the evidence on which the district court based its decision as to Goodwin and Cerio—evidence thoroughly reviewed by this Court—we cannot conclude that the district court abused its discretion in this regard. *See Grady v. Affiliated Cent., Inc.,* 130 F.3d 553, 561 (2d Cir.1997), *cert. denied,* —— U.S. ——, 119 S.Ct. 349, 142 L.Ed.2d 288 (1998).

## CONCLUSION

For the foregoing reasons, the judgment of the district court with respect to Goodwin, Morse, and Cerio, and with respect to Kalwasinski's motion for additional discovery, is AFFIRMED.