Anthony PALMER, Plaintiff–Appellee,

v.

Paul RICHARDS, Defendant–Appellant,

Ronald Goss, Defendant.

Docket No. 03–290.

United States Court of Appeals, Second Circuit.

Argued: Feb. 17, 2004.

Decided: April 6, 2004.

Caroline Mala Corbin (Michael A. Cheah, of counsel) New York, N.Y., for Plaintiff–Appellee.

Anthony C. Gould, Assistant Attorney General (Deon J. Nossel, Senior Assistant Solicitor General, and Michael J. Keane, Assistant Attorney General, of counsel) for Eliot Spitzer, Attorney General of the State of New York, for Defendant–Appellant.

Before: KEARSE, CABRANES, and KATZMANN, Circuit Judges.

KATZMANN, Circuit Judge.

This is yet another in a long line of cases evaluating when the procedural protections of the Due Process Clause attach to disciplinary hearings in New York State prisons. Because the plaintiff put forward sufficient evidence in resisting the defendants' motion for summary judgment that would allow a reasonable jury to find that the punishment imposed as a result of his disciplinary hearing violated his liberty interests, and because the defendant failed to show that those liberty interests were not clearly established, we conclude that the district court (Baer, J.) properly denied the defendant's motion for summary judgment on the basis of qualified immunity.

## BACKGROUND

This case arises from a dispute between a New York State prisoner, plaintiff-appellee Anthony Palmer, and a corrections officer, defendant Ronald Goss. Following a physical altercation between Palmer and Goss at the Sing Sing Correctional Facility—the substance of which is not before us, but the conflicting accounts of which can be found in the opinion and order of the district court, *Palmer v. Goss*, No. 02 Civ. 5804(HB), 2003 WL 22327110, 2003 U.S. Dist. LEXIS 18103 (S.D.N.Y. Oct.10, 2003)—Goss charged Palmer with various infractions including harassment, refusing a direct order, and violent conduct. The defendant-appellant, Deputy Superintendent Paul Richards, presided over a disciplinary hearing on those charges and found Palmer guilty. As a penalty, Richards sentenced Palmer to 90 days of confinement in "keeplock" and denied him access to packages, the commissary, and the telephone for 90 days. Thereafter, Palmer served 77 days in the Special Housing Unit ("SHU") of a different prison, where he was not permitted any personal property (including his personal food, clothing, and grooming and hygiene products), and he was placed in restraints whenever he was escorted outside his cell. Also as an apparent consequence of his confinement in SHU, the prison terminat-

ed Palmer's participation in the Family Reunion Program, through which he had enjoyed extended visits with his wife and children in a trailer outside the prison cellblocks.

In the process of appealing Richards's decision, Palmer realized that a portion of the tape of the hearing—containing the purportedly exculpatory testimony of a corrections officer named Wyllie—is inaudible, although the testimony immediately before and after Wyllie's is clear. From this, Palmer inferred that Richards, realizing that Palmer could not be convicted in light of Wyllie's testimony, intentionally erased Wyllie's testimony so that his verdict would sustain review. Ultimately, because of the defective hearing tape, the state reversed Richards's findings and expunged the hearing's outcome from Palmer's record. Palmer, proceeding *pro se*, then brought suit in the district court pursuant to 42 U.S.C. § 1983 against Goss, Richards, and other defendants alleging, *inter alia*, that Richards violated his due process rights by intentionally erasing the tape of the hearing.

The defendants moved for summary judgment. Richards argued that he was entitled to qualified immunity because Palmer's confinement in SHU for 77 days was too brief to implicate a liberty interest protected by the Due Process Clause and could not, therefore, trigger concomitant due process rights, and that in any event, Palmer "received all the process he was due." The district court denied Richards's motion, finding that the length of Palmer's sentence, when combined with his expulsion from the Family Reunion Program, could amount to an "atypical and significant hardship" within the meaning of *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), and that Palmer should be given a further opportunity to develop the record of the conditions

in SHU relative to those in the general prison population. *Palmer*, 2003 WL 22327110, at \*6. The district court also found that a reasonable jury could conclude that Richards intentionally erased the hearing tape, an act, the court stated, that would foreclose qualified immunity. *Id.* at \*7. The district court then appointed counsel to represent Palmer, and Richards appealed the district court's decision. Although the district court denied Richards's requests to stay proceedings pending his appeal, relying on the factual question of whether Richards intentionally erased the hearing tape, *see Palmer v. Goss*, No. 02 Civ. 5804(HB), 2003 WL 22519454, 2003 U.S. Dist. LEXIS 19895 (S.D.N.Y. Nov.5, 2003), a panel of this Court granted Richards's motion for a stay of proceedings in the district court and expedited Richards's appeal.

## DISCUSSION

 We have jurisdiction pursuant to the collateral order doctrine, under which "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' notwithstanding the absence of a final judgment," and we review the district court's decision *de novo. Savino v. City of New York*, 331 F.3d 63, 71 (2d Cir.2003) (internal quotation marks omitted). For these purposes, we accept Palmer's version of the facts as true and draw all reasonable inferences in his favor. *See Behrens v. Pelletier*, 516 U.S. 299, 312–13, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996); *Johnson v. Jones*, 515 U.S. 304, 313–18, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995); *Tellier v. Fields*, 280 F.3d 69, 78–79 (2d Cir.2000); *Salim v. Proulx*, 93 F.3d 86, 89–91 (2d Cir.1996). Therefore, notwithstanding the defendant's argument that certain of Palmer's allegations were too speculative to create jury questions that survive summary

judgment, we will not evaluate the sufficiency of the evidence marshaled in support of Palmer's specific factual allegations, *see Johnson*, 515 U.S. at 313, 115 S.Ct. 2151; *Salim*, 93 F.3d at 90–91, including Palmer's contention that Richards intentionally erased part of the tape of his disciplinary hearing.[1]

■■■ The "initial inquiry" of our qualified immunity analysis is to determine whether any right of Palmer's was violated at all. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Palmer had "no right to due process [at his hearing] *unless* a liberty interest" was infringed as a result. *Scott v. Albury*, 156 F.3d 283, 287 (2d Cir.1998) (per curiam). A prisoner's liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *see Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir.1996) (per curiam),[2] "and we read *Sandin* to require that we look to actual punishment in making this determination," *Scott*, 156 F.3d at 287. Factors relevant to determining whether the plaintiff endured an "atypical and significant hardship" include "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions" and "the duration of the disciplinary segregation imposed compared to discretionary confinement." *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir.1998).

■■■ Our cases "make clear that duration is not the only relevant factor. The conditions of confinement are a distinct and equally important consideration in determining whether a confinement in SHU rises to the level of 'atypical and severe hardship ....'" *Ortiz v. McBride*, 323 F.3d 191, 195 (2d Cir.2003) (per curiam). "Both the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir.1999) (citation omitted). Accordingly, and contrary to Richards's argument at summary judgment, we have explicitly avoided a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights. *See Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000); *Colon v. Howard*, 215 F.3d 227, 234 (2d Cir.2000). Instead, our cases establish the following guidelines for use by district courts in determining whether a prisoner's liberty interest was infringed. Where the

---

1. For this reason, we cannot dispose of this appeal on the ground that Palmer received all the process that he was due, as the intentional destruction of evidence does not comport with clearly established standards of procedural due process. *See Black v. Coughlin*, 76 F.3d 72, 76 (2d Cir.1996) ("[I]t has long been clearly established that an inmate subject to a disciplinary proceeding is entitled to an impartial hearing officer."); *cf.* N.Y. Comp. Codes R. & Regs. tit. 7, § 250.2(d) ("All control of inmate activities, including disciplinary action, must be administered in a completely fair, impersonal and impartial manner and must be as consistent as possible (given the need for individualized decisions).").

2. Of course, a prisoner must first show that the state created a liberty interest, by statute or regulation, before he can show that the interest was infringed. *Frazier*, 81 F.3d at 317. It is undisputed, however, that New York state law "create[s] a liberty interest in not being confined to the SHU." *Welch v. Bartlett*, 196 F.3d 389, 394 n. 4 (2d Cir.1999). On the other hand, there is no liberty interest in participating in the Family Reunion Program. *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir.1996); *Hernandez v. Coughlin*, 18 F.3d 133, 136–38 (2d Cir.1994). For this reason, Palmer's exclusion therefrom has no bearing on whether he was entitled to procedural due process under *Sandin*.

plaintiff was confined for an intermediate duration—between 101 and 305 days—"development of a detailed record" of the conditions of the confinement relative to ordinary prison conditions is required. *Colon*, 215 F.3d at 232; *accord Sims*, 230 F.3d at 23 ("[W]e have characterized segregative sentences of 125–288 days as relatively long, and thus necessitating specific articulation of ... factual findings before the district court could properly term the confinement atypical or insignificant." (citations and internal quotation marks omitted)). In those situations, a district court must "make a fact-intensive inquiry," *Sims*, 230 F.3d at 22, examining "the actual circumstances of SHU confinement" in the case before it without relying on its familiarity with SHU conditions in previous cases, *Kalwasinski v. Morse*, 201 F.3d 103, 106 (2d Cir.1999) (per curiam). Disputes about conditions may not be resolved on summary judgment, *Wright*, 132 F.3d at 137–38, but where the conditions are undisputed, the *Sandin* issue should be resolved by the court as a matter of law, *Colon*, 215 F.3d at 230–31; *Sealey*, 197 F.3d at 585.

■ . A confinement longer than an intermediate one, and under "normal SHU conditions,"[3] is "a sufficient departure from the ordinary incidents of prison life to require procedural due process protections under *Sandin*." *Colon*, 215 F.3d at 231 (finding that a prisoner's liberty interest was infringed by 305–day confinement);

*see also Tellier*, 280 F.3d at 80 (finding that a prisoner stated a due process claim when he was confined for 514 days). And although shorter confinements under normal SHU conditions may not implicate a prisoner's liberty interest, *see Sealey*, 197 F.3d at 589, we have explicitly noted that SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions of *Sealey* or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical, *see Ortiz*, 323 F.3d at 195 & n. 1; *Colon*, 215 F.3d at 232 n. 5, *quoted in Sims*, 230 F.3d at 23; *see also Sealey*, 197 F.3d at 586 ("In assessing whether Sealey's confinement was atypical, we are hampered by a less than adequate record, despite our prior remand for development of the relevant facts."); *Welch v. Bartlett*, 196 F.3d 389, 393 (2d Cir.1999) ("Whether the conditions of Welch's confinement constitute an atypical and significant hardship requires that they be considered in comparison to the hardships endured by prisoners in general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration."). In the absence of a detailed factual record, we have affirmed dismissal of due process claims only in cases where the period of time spent in

---

3. *See* N.Y. Comp.Codes R. & Regs. tit. 7, §§ 304.1–.14, 305.1–.6 (2003) (listing the "services" and "controls" of the special housing units). Under the "normal conditions of SHU confinement in New York," the prisoner is:

> placed in a solitary confinement cell, kept in his cell for 23 hours a day, permitted to exercise in the prison yard for one hour a day, limited to two showers a week, and denied various privileges available to general population prisoners, such as the op-

portunity to work and obtain out-of-cell schooling. Visitors [are] permitted, but the frequency and duration [is] less than in general population. The number of books allowed in the cell [is] also limited.

*Colon*, 215 F.3d at 230 (citation omitted); *see also Sealey*, 197 F.3d at 581 ("An inmate is confined to his cell 23 hours per day, can take no more than three showers per week, has limited library privileges and no telephone privileges."); *Frazier*, 81 F.3d at 315 (providing a similar description).

SHU was exceedingly short—less than the 30 days that the *Sandin* plaintiff spent in SHU—and there was no indication that the plaintiff endured unusual SHU conditions. *See, e.g., Hynes v. Squillace,* 143 F.3d 653, 658–59 (2d Cir.1998) (per curiam) (21 days in keeplock); *Arce v. Walker,* 139 F.3d 329, 335–36 (2d Cir.1998) (18 days in SHU); *Frazier,* 81 F.3d at 317 (12 days in SHU).

For example, in *Welch,* the plaintiff's affidavit specifically alleged, beyond the normal SHU conditions detailed above in note 3, that he endured "far inferior" hygienic conditions in SHU than prisoners in the general population and that he received "inadequate amounts of toilet paper, soap and cleaning materials, a filthy mattress, and infrequent changes of clothes." 196 F.3d at 393. We found, accepting these allegations as true for purposes of opposition to a summary judgment motion, that these facts would be sufficient to permit a conclusion of atypical and significant deprivation, notwithstanding that the plaintiff was only sentenced to 90 days in SHU, because "[t]he record d[id] not reveal whether it is typical for inmates not being disciplined to spend similar periods of time in similar circumstances." *Id.* at 394. We remanded for further proceedings without foreclosing the possibility that the defendants might prevail on another summary judgment motion. *Id.* at 394 & n. 3.

 *Welch* controls the case before us. In Palmer's case, as in *Welch,* where the duration of confinement, 77 days, was not long enough to constitute an atypical and significant deprivation by itself,[4] we look to the conditions of confinement. In

an affidavit submitted in opposition to the defendants' motion for summary judgment, Palmer averred as follows:

> The atypical and significant hardship this plaintiff suffered due to his wrongful confinement in S.H.U. was being deprived his property, [i.e.,] personal clothing, grooming equipment, hyg[i]enic products and materials, reading materials, writing materials, school books, personal food and vitamin supplements, family pictures as well as personal correspondences, being mechanically restrained whenever this plaintiff was escorted, and being out of communication from his family, were the hardships that this plaintiff suffered while in S.H.U.

This affidavit, which has not been contradicted, raises genuine questions of material fact as to the conditions under which Palmer was confined and how those conditions compared to the conditions imposed on the general prison population. *See Welch,* 196 F.3d at 394. We agree with the district court that, at least based on the record as it stands now, "Palmer should have the opportunity to demonstrate that the conditions of his confinement vis-a-vis both the conditions in administrative confinement and in the general prison population were sufficiently harsh" to violate a liberty interest despite the "comparative shortness" of his confinement. *Palmer v. Goss,* 2003 WL 22327110 at *6.

 Having found, "on a favorable view of the parties' submissions," that Palmer's right to due process may have been infringed, we move to the second prong of a qualified immunity analysis and "ask whether the right was clearly estab-

---

4. The actual duration of confinement is relevant to determining whether any liberty interest was infringed, *see Colon,* 215 F.3d at 231 & n. 4, but should the analysis proceed to the second prong of the qualified immunity analy-
sis—whether Richards's actions were objectively reasonable in light of the law at the time—the pronounced sentence is the relevant period, *see Hanrahan v. Doling,* 331 F.3d 93, 98 (2d Cir.2003) (per curiam).

lished." *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151. "As with public officers generally, prison officials performing tasks entrusted to their discretion typically 'are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Ford v. McGinnis*, 352 F.3d 582, 596 (2d Cir.2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)); *accord Hanrahan v. Doling*, 331 F.3d 93, 98–99 (2d Cir.2003) (per curiam); *Tellier*, 280 F.3d at 84–85. Whether Palmer's liberty interest was clearly established depends, in turn, on whether the duration and conditions of Palmer's confinement in SHU not only infringed a liberty interest, but also were of such a degree that an officer in Richards's position should have known, in light of *Sandin* and the law of this Circuit, that Palmer's liberty interests were at stake.[5] *See Hanrahan*, 331 F.3d at 99 ("Whatever confusion *Sandin* may have left in its wake, .... it was ... clearly established at the time of the alleged violations that disciplinary punishment, consisting of ten years of solitary confinement, triggered due process protection."); *Tellier*, 280 F.3d at 85 (finding it was objectively unreasonable to confine the plaintiff in SHU for 514 days without a hearing, but that a shorter confinement might have been "objectively reasonable"). It was, of course, Richards's burden at summary judgment to show the nonexistence of a clearly established right and his entitlement to qualified immunity. *Tellier*, 280 F.3d at 84.

The same factual question that prevents us from determining whether Palmer's liberty interest was infringed by his SHU confinement also prevents us from deciding whether Richards is entitled to qualified immunity. Given the state of the record, it is impossible to conclude that Palmer endured merely the normal SHU conditions that we have surveyed in our previous cases; instead, it is possible that Palmer endured unusually harsh SHU conditions that constituted an "atypical and significant deprivation" under *Sandin*, in which case Palmer's right to due process protections was clearly established. Richards made no effort before the district court to demonstrate what Palmer's conditions were, content to rest on the argument that "since plaintiff served only 77 days in SHU, no liberty interest is implicated." We had repeatedly held, prior to Palmer's disciplinary hearing in August 2000, that SHU confinements shorter than 101 days would deprive a prisoner of a liberty interest—and thus trigger due process rights—if the conditions of confinement were severe enough. *See, e.g., Colon*, 215 F.3d at 232 n. 5; *Sealey*, 197 F.3d at 589; *Welch*, 196 F.3d at 393–94. Our decisions, therefore, "clearly foreshadow" a finding that Palmer's liberty interests were infringed, entitling him to hearing procedures that conform to due process, *Tellier*, 280 F.3d at 85 (internal quotation marks omitted), although we cannot conclude as much without knowing more about the conditions of his confinement. Richards, therefore, did not carry his burden on summary judgment to show, on the

---

**5.** We recognize the difficulty of requiring a hearing officer to decide whether due process protections are implicated before he passes down the very sentence that triggers those protections. *See Colon*, 215 F.3d at 233 & n. 6. This is, however, a necessary result of *Sandin*, and in any event, because state law re-

quires hearing officials to conform their conduct to essentially the same minimums that the Due Process Clause requires—for example, it prohibits tampering with evidence—this approach does not burden state hearing officers. *Id.*

undisputed facts, that no clearly established right of Palmer's was infringed.[6]

## CONCLUSION

For the foregoing reasons, the order of the district court is AFFIRMED.

**6.** It may be, of course, that Palmer's actual deprivation was neither atypical nor significant in comparison to the ordinary incidents of prison life, or that it was not clearly so, and we do not foreclose the possibility that Richards might prevail on a subsequent motion for summary judgment, should the District Court permit Richards to bring such a motion.