GRAHAM, Senior District Judge,
concurring:
I join the panel’s opinion with the exception of Section III.B.2. I write separately because I disagree with my colleagues’ interpretation of the Supreme Court’s decision in Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), in the context of their analysis of Chappell’s due process claim based on a state-created liberty interest.
I believe that subjecting Chappell to contraband watch did not violate his rights under the Due Process Clause. The due process analysis should end there because Chappell has identified no state statute or regulation which limits the discretion of prison officials to subject him to this kind of temporary investigatory confinement. In the absence of such a state statute or regulation, there can be no state-created liberty interest.
My colleagues apparently believe that Sandin changed this requirement and that post-Sandin any change in conditions of confinement which imposes an “atypical and significant hardship” may give rise to a violation of a state-created liberty interest. I fail to understand how it could be said that a state has “created” a liberty interest by imposing harsher conditions of confinement. In effect, my colleagues have interpreted Sandin to conflate the state-created liberty interest analysis so as *1066 to give a state prisoner direct access to the protections of the Due Process Clause if he can show that the conditions of his confinement impose an “atypical and significant hardship.” This is a radical change in due process jurisprudence and a significant departure from previous limitations. See Meachum v. Fano, 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) (rejecting the proposition that “[a]ny change in the conditions of confinement having a substantial adverse impact on the prisoner involved is sufficient to invoke the protections of the Due Process Clause”). Cases in which the Supreme Court has found that conditions of confinement amounted to a violation of the Due Process Clause have been limited to such extremes as involuntary commitment to a mental institution and the forced administration of psychotropic drugs. See Vitek v. Jones, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) and Washington v. Harper, 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990).
A state may create a liberty interest through statutes and prison regulations and may thereby trigger due process protections. Wilkinson v. Austin, 545 U.S. 209, 222, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005); Neal v. Shimoda, 131 F.3d 818, 827 (9th Cir.1997). The determination of whether a state-created liberty interest exists is a two-part inquiry. First, there must be a regulation that places “substantive limitations on official discretion.” Mendoza v. Blodgett, 960 F.2d 1425, 1428 (9th Cir.1992) (citing Kentucky Dep’t of Corrections v. Thompson, 490 U.S. 454, 462, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989)). In Mendoza, the court explained:
The most common way a state creates such an interest is by adopting regulations which establish “substantive predicates” to govern official decisionmaking and by mandating the outcome to be reached upon a finding that the relevant criteria have been met. There must be particularized standards or criteria to guide the state’s decisionmakers, and the criteria must serve to limit discretion. If a decisionmaker can make his decision for any constitutionally permissible reason or for no reason at all, the state has not created a liberty interest.
960 F.2d at 1428-1429 (citations omitted).
The second part of the inquiry asks whether the regulation in question concerns a restraint that imposes an “atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.” Sandin, 515 U.S. at 484, 115 S.Ct. 2293. Prior to Sandin, prisoners had asserted federal due process claims based on all sorts of prison regulations, such as those pertaining to visitation, lunch trays, books, electrical outlets in cells, prison jobs, etc. Id. at 482-83, 115 S.Ct. 2293. In Sandin, the Court clarified its earlier decisions on state-created liberty interests by making it clear that those interests are protected by the Due Process Clause only when state regulations, relating to freedom from restraints, impose “atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life.” Id. at 484, 115 S.Ct. 2293.
This two-part inquiry is based on my understanding of the state of the law in the aftermath of Sandin and is the approach adopted by the Second Circuit. In Tellier v. Fields, 280 F.3d 69 (2d Cir.2000), the Second Circuit described the proper analysis:
As we have recognized previously, after the Supreme Court’s decision in Sandin, our determination of “whether the plaintiff had a protected liberty interest in not being confined” also requires a two-part analysis. [Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir.1997)] (citing Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir.1996) (per curiam)). “As a result of Sandin, a prisoner has a liberty interest *1067 only if the deprivation ... is atypical and significant and the state has created the liberty interest by statute or regulation.” Id. at 52.
First, we examine whether the alleged deprivation was atypical and signifi-' cant.... Second, we must examine whether the state has created a liberty interest by statute or regulation.
280 F.3d at 80.
After conducting the Hewitt/Sandin analysis ... we conclude that Section 541.22 creates a liberty interest. Under [Hewitt v. Helms, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983) ], courts considering the existence of an alleged liberty interest must ascertain whether “statutes or regulations require, in ‘language of an unmistakably mandatory character,’ that a prisoner not suffer a particular deprivation absent specified predicates.” Welch v. Bartlett, 196 F.3d 389, 392 (2d Cir.1999) (quoting Hewitt, 459 U.S. at 471-72 [103 S.Ct. 864]).
280 F.3d at 81.
Read together, Sandin, Wolff, and Meachum, all support the proposition that a statute or regulation which involves “state-created rightfs],” [Wolff v. McDonnell, 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) ], creates a protectable liberty interest when an official’s failure to adhere to the statute results in an “atypical, significant deprivation,” Sandin, 515 U.S. at 486 [115 S.Ct. 2293], of “real substance,” Wolff, 418 U.S. at 557 [94 S.Ct. 2963], and not simply “ephemeral and insubstantial” violations. Meachum, 427 U.S. at 228 [96 S.Ct. 2532],
280 F.3d at 83.
Similarly, in Smith v. Cruse, the Northern District of California held that San-din’s, “atypical and significant hardship” due process analysis must be triggered by the existence of a state regulation which significantly limits the discretion of prison officials. No. C 10-3684 SBA (PR), 2012 WL 1155964, at *7 (N.D.Cal. Mar. 30, 2012); see also Lopez v. Cate, No. C 11-2644 YGA (PR), 2012 WL 4677221, at *5 (N.D.Cal. Sept. 30, 2012) (“Deprivations that are authorized by state law ... may also amount to deprivations of a procedurally protected liberty interest, provided that: (1) state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation, i.e., give the inmate a kind of right to avoid it, and (2) the liberty in question is one of ‘real substance.’ ”); Reed v. Knipp, No. CIV-S-11-2753 KJN KJN P., 2012 WL 6570906, at *2 (E.D.Cal. Dec. 17, 2012) (“Because this language gives the decisionmaker a certain amount of discretion to deny credit restoration, the statutes and regulations do not create a liberty interest in the restoration of forfeited credits.”).
The court cites the opinions of five panels of this court for the proposition that “we have concluded that the discretionary/mandatory substantive predicates approach was ‘abandoned’ or ‘overruled’ in Sandin, and our decisions have focused only on the ‘atypical and significant hardship’ test, even in the face of relevant prison regulations.” It is true that, in these five cases[1] and a handful of others,[2] *1068 panels of this court have opined that San-din ended the substantive predicate approach. But none of these cases directly address the issue, and their statements about the continuing validity of the substantive predicate approach are dicta, not binding on this panel or on district courts within the circuit. Instead, these cases simply affirm the uncontroversial proposition that Sandin created the requirement of an “atypical and significant hardship” in order to establish a state-created liberty interest.
Turning now to the facts of this case, the parties did not identify any prison regulation that puts a limit on an official’s discretion in order to place a prisoner on contraband watch. The parties seem to have agreed, and certainly did not dispute for purposes of summary judgment, that the contraband watch regulations in effect at the relevant time were set forth in plaintiffs exhibit J.[3] These regulations deal mainly with the conditions of contraband watch, and do not describe any limitations on an official’s discretion. The only provisions relating to the decision to place an inmate on contraband watch are found in the first paragraph of page 1 and the second paragraph on page 5 of regulation 52050.25:
The responsible Facility Captain during business hours, and the AOD during non-business hours, (evenings/Saturdays/ Sundays/holidays), are delegated the authority to place inmates suspected of concealing contraband items within their body cavities on Body Cavity Surveillance Status. Notification will be made to the respective Associate Warden during business hours.
The Watch Commander will only terminate Body Cavity Surveillance with Concurrence of the Facility Captain where the inmate was previously housed or the AOD during non-business hours. If extenuating circumstances exist, the Body Cavity Surveillance may be continued; however, review of each case will be conducted daily by the affected Facility Program Lieutenant to determine whether termination or continuation of the Body Cavity Surveillance is necessary.
An inmate may be placed on contraband watch based on mere suspicion of concealing contraband within his body cavities. Such suspicion does not even have to be reasonable. Moreover, it appears from the regulation that it is entirely within the discretion of the affected Facility Program Lieutenant to determine whether termination or continuation of the Body Cavity Search is necessary. This regulation is *1069 not a substantive limitation on official discretion and therefore the regulations do not qualify as a state-created liberty interest.
Because subjecting Chappell to contraband watch did not violate the Due Process Clause, and because he failed to show that he had a state-created liberty interest in avoiding contraband watch, his due process claim fails as a matter of law.

. Myron v. Terhune, 476 F.3d 716, 719 (9th Cir.2007) (finding prison regulations governing an inmate's classification did not create a liberty interest because they did not amount to an atypical and significant hardship and noting that Sandin rejected the mandatoiy/discretionary methodology); McQuillion v. Duncan, 306 F.3d 895, 903 (9th Cir.2002) (holding that Sandin was not applicable to the parole system at issue, but opining that San-din "abandoned” the mandatory language framework); Mitchell v. Dupnik, 75 F.3d 517, 522 (9th Cir. 1996) (holding a jail policy did not create an "atypical and significant hardship” and so no liberty interest was created, but noting the Supreme Court in Sandin criticized the "substantive predicate approach”); Duffy v. Riveland, 98 F.3d 447, 457 (9th Cir. 1996) (remanding the case for consideration *1068 of whether the deprivation constituted an atypical and significant hardship, but commenting that the substantive predicate test had been "abandoned” by Sandin); Mujahid v. Meyer, 59 F.3d 931, 932 (9th Cir.1995) (holding disciplinary segregation did not constitute "atypical and significant” hardship under Sandin and thus, no liberty interest was created, but noting that case law employing the "substantive predicate” and "mandatory language” test had been overruled by San-din ).

. See, e.g., Neal v. Shimoda, 131 F.3d 818, 829-30 (9th Cir.1997) (opining that the substantive predicate test had "likely ... been disapproved” by Sandin, but concluding that, in any event, the classification of prisoners as sex offenders satisfies that test); Keenan v. Hall, 83 F.3d 1083, 1088-89 (stating that San-din "rejected its prior [substantive predicate] test” and remanding because the district court had not considered whether the deprivation was atypical and significant).

. This exhibit was not included in the record of this court and was obtained from the district court docket. According to the district court decision, plaintiff offered this excerpt of the CDC Operations Manual as proof of the conditions and procedures in effect at the time when he was on contraband watch, and the defendants have not objected to its accuracy.