08-0479-cv
Davis v. Barrett

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: June 23, 2009          Decided: August 7, 2009
                                Amended: August 13, 2009)

Docket No. 08-0479-cv

SAMUEL ED DAVIS,

*Plaintiff-Appellant*,

-v.-

DAVID L. BARRETT,

*Defendant-Appellee*.

Before:

 PARKER and WESLEY, *Circuit Judges*, CEDARBAUM, District Judge.[*]

    Appeal from an order of the United States District Court for the Western District of New York (Schroeder, *M.J.*), entered on January 15, 2008, granting summary judgment in favor of Defendant on Plaintiff-Appellant's 42 U.S.C. § 1983 due process claim.

    VACATED AND REMANDED.

---

    [*] The Honorable Miriam Goldman Cedarbaum, United States District Court for the Southern District of New York, sitting by designation.

JOANNA R. VARON, Duane Morris, LLP, New York, NY
(Anthony J. Costantini, Kathrine A. Gehring,
*of counsel*), *for Plaintiff-Appellant*.

MARTIN A. HOTVET, Assistant Solicitor General
(Barbara D. Underwood, Solicitor General;
Andrea Oser, Deputy Solicitor General; Nancy
A. Spiegel, Senior Assistant Solicitor
General; and Michael J. Russo, *of counsel*),
*for* Andrew M. Cuomo, Attorney General of the
State of New York, Albany, NY, *for Defendant-
Appellee*.

PER CURIAM:

Plaintiff-appellant Samuel Ed Davis, an inmate in the custody of the New York State Department of Correctional Services ("DOCS") appeals from a January 15, 2008 decision and order of United States Magistrate Judge Kenneth Schroeder, Jr., granting summary judgment in favor of David Barrett, a DOCS hearing officer, and dismissing Davis's action under 42 U.S.C. § 1983, seeking damages for the alleged abridgment of his procedural due process rights by Barrett in the course of assigning him to administrative segregation for 55 days. *Davis v. Barrett*, No. 02-CR-0545(Sr) (W.D.N.Y. Jan. 15, 2007).

On appeal, Davis argues that the magistrate judge

conducted a flawed *Sandin v. Conner*, 515 U.S. 472 (1995), analysis by failing to undertake a careful examination of the actual conditions of Davis's confinement and by failing to compare them with those of the general prison population and other segregated confinement. In so doing, Davis argues, the magistrate judge erroneously concluded that Davis had not properly alleged a liberty interest sufficient to trigger due process protection. We hold that a dispute of fact exists as to the actual conditions of Davis's confinement, and thus vacate the district court's judgment and remand for further fact-finding.

**Background**

On January 3, 2001, Davis, an inmate at the Elmira Correctional Facility, received an administrative segregation recommendation written by Sergeant Perry, stating that Perry had received confidential information from four separate sources in the previous two weeks indicating that Davis was involved in fights and extortion. The informants asserted that Davis used a weapon on occasion and targeted weaker inmates from whom he extorted commissary

3

products.  During an administrative hearing held on January 16, 2001, with Barrett serving as the DOCS hearing officer, Davis acknowledged having received Perry's recommendation, but denied the allegations.  Barrett did not interview the confidential informants, or Perry, but rather relied exclusively on Perry's report, explaining that he "had confidence in [Perry's] ability to assess their credibility."  At the conclusion of the hearing, Barrett advised Davis that he agreed with Perry's recommendation, and Davis was transferred to administrative segregation in the Special Housing Unit ("SHU"), where he remained for 41 days, until he was transferred to the general population at Attica Correctional Facility.

Davis timely filed an administrative appeal.  *See* N.Y. Comp. Codes R. & Regs. tit. 7, § 254.8.  Barrett's decision was reversed on March 6, 2001, based on the absence of testimony from the author of the recommendation (Perry), or an assessment by Barrett of the reliability of the confidential information.

Davis filed a pro se complaint on July 31, 2002, pursuant to 42 U.S.C. § 1983, seeking compensatory and

punitive damages, alleging that his procedural due process rights were violated by the administrative hearing. Barrett moved for summary judgment, and Davis opposed the motion.[1] Magistrate Judge Schroeder held that Davis "failed to demonstrate that the conditions of his administrative confinement from January 3, 2001 through February 26, 2001, created a constitutionally protected liberty interest." He noted that Davis was confined in administrative segregation from January 3, 2001 through February 26, 2001, and that a 55-day period was insufficient to establish a liberty interest in the absence of evidence of conditions more onerous than normal for SHU. While the magistrate judge acknowledged Davis's allegations regarding atypical conditions of confinement, he concluded that Davis had not demonstrated a liberty interest sufficient to trigger due process protection, and therefore granted summary judgment in favor of Barrett. This appeal followed.[2]

---

[1] The parties consented to proceed before a magistrate judge.

[2] We review *de novo* a district court's grant of summary judgment. *Aon Financial Prods. v. Societe Generale*, 476 F.3d 90, 95 (2d Cir. 2007). Summary judgment is warranted when the evidence in the record "show[s] that there is no genuine issue as to any material fact and that the moving

## Discussion

### A.   Exhaustion of Administrative Remedies

As a preliminary matter, we address Barrett's argument that Davis failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e *et seq*.  Davis argues that he adequately exhausted his administrative remedies by filing an administrative appeal following his administrative hearing, while Barrett argues that Davis was additionally required to grieve separately the conditions of his confinement to exhaust his prison remedies.  We agree with Davis that his appeal of the administrative hearing was sufficient to exhaust all available administrative remedies as required by the PLRA.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [§ 1983] . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *see generally Woodford v. Ngo*, 548 U.S. 81 (2006).  The Supreme Court has

party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

stated that the phrase "prison conditions" in the PLRA refers to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). There are several reasons underlying the exhaustion requirement. Exhaustion gives the DOCS "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Woodford*, 548 U.S. at 89 (internal quotation marks and citation omitted). Further, exhaustion promotes efficiency by requiring claims first to be processed at the administrative level, often obviating the need for parties to pursue the matter further in federal court. *Id.*

Barrett claims that, under the PLRA, Davis was not only required to appeal the administrative hearing, but also to separately grieve the conditions of his confinement. But Davis only seeks redress for his claim that the hearing procedure violated his constitutional right to due process. He contends he has done all that New York requires to appraise prison officials of his "injury."

7

Under New York's Inmate Grievance Program regulations, Barrett's handling of the hearing is non-grieveable. The regulation provides that "[a]n individual decision or disposition of any current or subsequent program or procedure having a written appeal mechanism which extends review to outside the facility shall be considered non-grievable." N.Y. Comp. Codes R. & Regs. tit. 7, § 701.3(e)(1). New York courts have made clear that "while the grievance procedure cannot be used to challenge the decision in a particular disciplinary proceeding which results in a sanction, it may be used to challenge the *manner* in which the sanction is imposed." *Johnson v. Ricks*, 278 A.D.2d 559, 559 (3d Dep't 2000), *lv denied* 96 N.Y.2d 710 (2001) (citations omitted) (emphasis added).

Under New York's regulations, Barrett's alleged conduct in presiding over the administrative hearing was properly the subject of an appeal of the hearing, but could not be the basis for an additional grievance. And while the PLRA is not subject to re-interpretation by state law, the availability of administrative remedies for prisoner complaints is a decidedly state law matter. Davis raised,

8

in his administrative appeal, his objections to Barrett's conduct, and could not further grieve the procedures of the appeal under New York's regulations.  Davis's successful appeal of his administrative hearing constitutes exhaustion under the PLRA for purposes of rendering his due process claim ripe for adjudication in federal court.  *See Rivera v. Goord*, 253 F. Supp. 2d 735, 750 (S.D.N.Y. 2003); *Sweet v. Wende Corr. Facility*, 253 F. Supp. 2d 492, 496 (W.D.N.Y. 2003).

Furthermore, this Court has previously indicated that a prisoner may exhaust his administrative remedies for segregated confinement by appealing the adverse hearing determination.  *See Ortiz v. McBride*, 380 F.3d 649, 653-54 (2d Cir. 2004).  In *Ortiz*, this Court expressly agreed with the parties that Ortiz exhausted his administrative remedies with respect to his due process claim by successfully appealing the hearing which resulted in his confinement. *Id.* at 653.

Davis's failure to grieve the conditions of his confinement is no bar to his due process claim because the conditions of his confinement are not the basis on which he

9

alleges he suffered harm.  In *Ortiz* the court distinguished exhaustion for his due process claim from exhaustion for his Eighth Amendment claim (the latter being a claim as to the manner in which the sanctions were imposed).  We noted that Ortiz was required to grieve the conditions of his confinement in order to exhaust his Eighth Amendment claim. *Id.* at 654.  Here, unlike in *Ortiz*, Davis makes no claim—under the Eighth Amendment or otherwise—challenging the conditions of his confinement directly.  Rather, his sole claim calls in to question Barrett's conduct at the administrative hearing.  Thus, we find that Davis's administrative appeal was sufficient for purposes of PLRA exhaustion.

The concerns underlying the PLRA's exhaustion rule support our conclusion that Davis's administrative appeal satisfied the exhaustion requirement.  The administrative appeal adequately apprised the DOCS officials of the conduct of which Davis complained—the manner in which his administrative hearing was conducted.  *See Woodford*, 548 U.S. at 89.  The allegations of atypical conditions are only relevant to the instant appeal insofar as Davis was required

10

to demonstrate such conditions to allege that he had a liberty interest sufficient to trigger due process protections during his administrative hearing.  Davis properly contested the manner in which Barrett conducted the hearing with his administrative appeal, and he secured a victory when Barrett's decision was reversed because "[Perry's] report was based on investigation and confidential information [and the] author did not testify and no assessment of reliability was made on the confidential information."  He was not required to file any additional complaints with the agency to satisfy the PLRA's exhaustion requirements.  *See Ortiz*, 380 F.3d at 653-54; *Abney v. McGinnis*, 380 F.3d 663, 668-69 (2d Cir. 2004); *Marvin v. Goord*, 255 F.3d 40, 43 & n.3 (2d Cir. 2001) (per curiam).

**B.    Procedural Due Process**

"A prisoner's liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life,' . . .." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir.

11

2004) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (alteration in original)). "Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary segregation imposed compared to discretionary confinement.'" *Id.* (quoting *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir. 1998)). This Court noted in *Colon v. Howard*, 215 F.3d 227 (2d Cir. 2000), that restrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection, and thus require proof of conditions more onerous than usual. *Id.* at 231-32 & n.5. We have also stated that SHU confinements of fewer than 101 days "could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions . . . or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer*, 364 F.3d at 65.

In determining whether Davis endured an atypical and

12

significant hardship, the magistrate judge was required to examine the conditions of confinement "in comparison to the hardships endured by prisoners in general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration." *Welch v. Bartlett*, 196 F.3d 389, 392-93 (2d Cir. 1999). In making such a determination, courts are required to examine the actual circumstances of confinement, *see Brooks v. DiFasi*, 112 F.3d 46, 48-49 (2d Cir. 1997); *Miller v. Selsky*, 111 F.3d 7, 8-9 (2d Cir. 1997), and to identify with specificity the facts upon which their conclusions are based, *see Sealey v. Giltner*, 116 F.3d 47, 52 (2d Cir. 1997) ("[W]e have indicated the desirability of fact-finding before determining whether a prisoner has a liberty interest in remaining free from segregated confinement.") (citations omitted); *Frazier*, 81 F.3d at 317. This Court has stated that "[d]isputes about conditions may not be resolved on summary judgment." *Palmer*, 364 F.3d at 65 (citing *Wright*, 132 F.3d at 137-38). Only when the conditions are uncontested may a district court resolve the issue of

13

atypicality of confinement as a matter of law.  *Id.*

In this case, the magistrate judge found that Davis's confinement did not rise to the level required to implicate a liberty interest because he had failed to present evidence demonstrating atypical or onerous conditions.  Specifically, the court based its conclusion on (1) the fact that Davis's conditions in administrative segregation were less onerous than inmates in SHU for disciplinary confinement because in administrative segregation Davis was allowed personal property and access to monthly commissary purchases; and (2) the fact that there was no evidence of complaints made by Davis about unhygienic conditions.  However, the magistrate judge's decision failed to presume the truthfulness of Davis's allegations concerning  the conditions of his confinement (as opposed to the conditions generally mandated by prison regulations), and did not adequately compare those conditions to the conditions in the general population and other segregated confinement.

There are a number of factual disputes about the conditions of Davis's confinement.  Barrett asserted that all SHU inmates were subject to the conditions outlined in the prison regulations and directives governing disciplinary

14

SHU segregation. Namely, Barrett stated that, in accordance with regulations, all SHU inmates are confined to their cells except for one hour of exercise daily, a minimum of two showers a week, unlimited legal visits, and one non-legal visit per week, and inmates in SHU are permitted books and periodicals, may possess personal property, are allowed to participate in cell study programs, and are permitted to make commissary purchases on a monthly basis. Affidavits submitted by DOCS officers who worked at the SHU during the time of Davis's confinement corroborate that these policies were in operation then, and one avers that no deviations from the required hygienic standards occurred. In contrast, Davis asserted in his sworn affidavit that he was kept in his cell twenty-four hours per day, that he was denied participation in any cell study program, and that he was not given commissary privileges. Davis further asserted that he was subjected to unhygienic conditions, specifically alleging that (1) his cell had no furniture, and thus all items, including his clothes and food tray, had to be kept on the floor; (2) that his mattress was "infected" with body waste; and (3) that his cell was subject to "daily" flooding, and feces and urine thrown by other inmates. In

15

our view, an issue of fact exists as to the actual conditions of Davis's confinement.

Finally, the magistrate judge failed to conduct a thorough comparison of the alleged conditions of Davis's confinement with those of the general population. *See Welch*, 196 F.3d at 393 (stating that a court must assess the hardships asserted by a SHU inmate "in comparison to the hardships endured by prisoners in general population"). Even though Davis's confinement was relatively short—lasting at most 55 days—this Court has required a "detailed factual record," unless "the period of time spent in SHU was exceedingly short—less than [] 30 days . . . —and there [is] no indication that the plaintiff endured unusual SHU conditions." *See Palmer*, 364 F.3d at 65-66. Here, the record lacks any evidence of the conditions for other inmates in administrative confinement, or in the general prison population. To the extent that the magistrate judge conducted any comparison of conditions, he simply noted that, based upon the regulations, the conditions in administrative segregation were no more severe than disciplinary SHU conditions. However, this finding was

16

insufficient under the requirements of *Welch*. A detailed factual record containing information as to the actual conditions in both administrative segregation and for the general population is necessary for the court to make the type of comparison required. *See Brooks*, 112 F.3d at 49 ("The [*Sandin*] Court did not suggest, however, that regulations permitting lengthy administrative confinement compel the conclusion that extended disciplinary confinement is necessarily compatible with due process. To the contrary, the decision in *Sandin* entailed careful examination of the actual conditions of the challenged punishment compared with ordinary prison conditions. . . . [The] court must examine the specific circumstances of the punishment.").

Because the conditions of Davis's confinement are in dispute, and the factual record is not fully developed as to the conditions either in his case, or in the case of the general population, we do not reach the ultimate issue of whether, if Davis has demonstrated a liberty interest, the administrative hearing violated his rights to due process.

**Conclusion**

The district court's order of January 15, 2008, granting summary judgment in favor of Defendant on Plaintiff-Appellant's 42 U.S.C. § 1983 due process claim is hereby VACATED. We REMAND for further fact-finding on the issue of the actual conditions of Davis's confinement in comparison to ordinary prison conditions. On remand, the district court may wish to hold a trial on the issue of Davis's liberty interest if it so chooses. We note that a determination that Davis was not subjected to atypical conditions giving rise to a liberty interest would obviate the need to reach the ultimate issue of whether the process employed during his administrative hearing complied with the requirements of due process.