OPINION
PER CURIAM.
Sean Pressley, a Pennsylvania prisoner proceeding pro se, filed an action under 42 U.S.C. § 1983 alleging violations of his procedural due process and Eighth Amendment rights. The District Court entered summary judgment in favor of the defendants. On appeal, Pressley argues, among other things, that the District Court erred in entering summary judgment on his procedural due process claims. We will remand the ease to the District Court.
In 2001, Pressley was incarcerated at the State Correctional Institute at Greene in Waynesville, Pennsylvania (“SCI-Greene”). Between March 29 and August 20, 2001, Pressley was charged with thirteen counts of misconduct at SCI-Greene. Following three institutional disciplinary proceedings, he was sentenced to 1080 days’ disciplinary custody in the Restricted Housing Unit (“RHU”). He served roughly two years of the sentence at SCI-Green, and the remaining year at the State Correctional Institution in Camp Hill, Pennsylvania (“SCI-Camp Hill”).[1]
In December 2001, Pressley filed a complaint pursuant to 42 U.S.C. § 1983 in the United States District Court for the Western District of Pennsylvania against vari *703 ous employees of the Pennsylvania Department of Corrections (“DOC”). In August 2002, Pressley filed an amended complaint in which he alleged that he was denied procedural due process at his disciplinary proceedings because he had not been given notice of the charges against him, and was otherwise precluded from participating in the hearings. Pressley also alleged that he was denied due process when the defendants deducted money from his inmate account without providing him with notice and an opportunity to be heard. Pressley further alleged that his Eighth Amendment rights had been violated because, for example, he was denied a proper diet, was exposed to contaminated utensils, and was given dirty garments.
In January 2003, Pressley sought leave to file a second amended complaint. A Magistrate Judge granted Pressley’s request, and Pressley filed his pleading. Soon thereafter, however, the defendants objected, claiming that they had never been served with a copy of the new complaint. As a result, by order entered February 4, 2003, the Magistrate Judge ordered the second amended complaint stricken from the record. Pressley appealed the Magistrate Judge’s order to the District Court, but the court affirmed the Magistrate Judge’s decision. In April 2003, Pressley submitted another motion to the Magistrate Judge requesting leave to file a second amended complaint. The Magistrate Judge denied this request as well, explaining to Pressley that he had again failed to serve the defendants, and had also failed to attach a copy of the proposed second amended complaint to his motion. As before, Pressley appealed to the District Court, and the District Court affirmed. Pressley apparently sought leave to amend his complaint at least once more, in November 2004, but the Magistrate Judge denied that request as well.
The District Court found that Superintendent Blaine, Deputy Superintendent Miller, Hearing Examiner Bitner, members of the Program Review Board, and D’Eletto and Torrets (who were involved in the disciplinary hearing appeals process) were entitled to judgment as a matter of law. (Dist. Ct. Memorandum Opinion & Order, May 17, 2006.) As a result, when the motion for summary judgment was filed, the only defendants left in the case were the corrections officers directly involved in the disputed misconduct reports and hearings. The motion asked for summary judgment on Pressley’s Eighth and Fourteenth Amendment claims. On February 8, 2008, 544 F.Supp.2d 446, the District Court[2] granted the motion and entered judgment in favor of the defendants. This appeal followed.[3]
II.
A. District Court’s Order Striking Pressley’s Motion for Leave to File Second Amended Complaint
Pressley first claims that the District Court abused its discretion by denying his request for leave to file a second amended complaint. As noted above, Pressley was able to initially amend his complaint in August 2002, but was subsequently denied permission to file a second amended complaint on three separate occasions. Pressley now challenges the first of these three denials — i.e., the Magistrate Judge’s February 4, 2003 order striking the second *704 amended complaint and the District Court’s February 21, 2008 order affirming the same. The Magistrate Judge had granted Pressley leave to file a second amended complaint, and Pressley did so, but the defendants objected, claiming that they had not been served with a copy thereof. As a result, the Magistrate Judge ordered the second amended complaint stricken from the record. Pressley now admits that, at the time that the defendants filed their objections, he had not yet properly served them, but claims that he did in fact mail a copy of the pleading soon thereafter. Pressley contends that the defendants never informed the Magistrate Judge that he had corrected his error, even though there was ample time to do so before the Magistrate Judge ruled on their objections.
Even assuming, however, that the District Court was, as Pressley alleges, ill-informed as to whether he had eventually effected service, he has not demonstrated how he was prejudiced by the Court’s error. Nothing prevented Pressley from returning to the Magistrate Judge with another motion seeking leave to file a second amended complaint, and, in fact, Pressley did just that. Although his second attempt was equally unsuccessful, his lack of success was due to his own error, not the Magistrate Judge’s. See Ranke v. Sanofi-Synthelabo, Inc., 436 F.3d 197, 206 (3d Cir.2006) (holding that a failure to submit a draft amended complaint is fatal to a request for leave to amend). Therefore, Pressley has not demonstrated that he is entitled to any relief on this basis.[4]
B. Defendant’s Failure to Produce Requested Discovery
Pressley next argues that the District Court erred by ruling on the defendants’ summary judgment motion before discovery was completed. Pressley states that, on June 15, 2005, he filed a motion to compel discovery, which the District Court granted. According to Pressley, however, the defendants never produced the requested discovery. Pressley claims that he notified the court of their failure to do so during a telephone conference on March 26, 2007, but that the Court instructed him to save his argument for his brief in opposition to the defendant’s motion for summary judgment. Although Pressley did include an argument on the issue in his brief, the District Court apparently saw no basis for relief. Pressley now argues that, because the District Court failed to order the defendants to produce the requested documents, he was unable to sufficiently support his Eighth Amendment claims.
We cannot discern any error in the District Court’s actions. As noted above, the District Court instructed Pressley to set forth his argument in his brief in opposition to the defendants’ motion for summary judgment. Although he did include an argument in his brief, he failed to identify the documents he sought, or demonstrate how those documents would support his claims. Instead, he simply asserted that the defendants’ failure to disclose the “requested discovery” prejudiced him “by limiting his ability to adequately respond *705 to their claims.” (Brief in Opposition to Defendants’ Motion for Summary Judgment 8.) Without further guidance as to the nature or relevance of the requested discovery, the District Court had no reason to delay adjudication of the defendants’ motion for summary judgment.
C. Due Process Claims
Next, Pressley challenges the District Court’s order granting the defendants’ motion for summary judgment on his Fourteenth Amendment due process claims. We review a District Court’s order granting summary judgment de novo. Pa. Coal Ass’n v. Babbitt, 63 F.3d 231, 236 (3d Cir.1995). Summary judgment is proper only if it appears “that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Fed.R.Civ.P. 56(c); Carrasca v. Pomeroy, 313 F.3d 828, 832-33 (3d Cir.2002).
1. Misconduct Hearings
Pressley first argues that the District Court erred in concluding that the duration of his placement in disciplinary custody in the RHU, and the attendant hardships of such confinement, did not give rise to a protected liberty interest. He also argues that the court erred in finding that the defendants afforded him all of the process that he was due at his disciplinary proceedings.
In analyzing a procedural due process claim, the first step is to determine whether the nature of the interest is encompassed within the Fourteenth Amendment’s protection. See Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). Once we determine that the interest is protected, the question becomes what process is due to protect it. See Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).
a. Pressley’s Liberty Interest
Procedural due process rights are triggered by deprivation of a legally cognizable liberty interest. For a prisoner, such a deprivation occurs when the prison “imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.” Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). In determining whether a protected liberty interest exists, the court must consider: (1) the duration of the disciplinary confinement; and (2) the conditions of that confinement in relation to other prison conditions. Id. Because of the fact-specific nature of this test, our cases engaging in this inquiry have reached differing outcomes. Compare Leamer v. Fauver, 288 F.3d 532, 545 (3d Cir.2002) (denial of the right to participate in a sex offender treatment program that was “mandated and promised” by New Jersey law implicated a protected liberty interest), and Shoats v. Horn, 213 F.3d 140, 144 (3d Cir.2000) (eight year’s in administrative confinement, during which inmate was locked in his cell for all but two hours per week, denied contact with his family, and prohibited from visiting the library or “participating in any education, vocational, or other organization activities,” implicated a protected liberty inter est), with Smith v. Mensinger, 293 F.3d 641, 645, 654 (3d Cir.2002) (seven months in disciplinary confinement did not implicate a liberty interest), Torres v. Fauver, 292 F.3d 141, 151-52 (3d Cir.2002) (disciplinary detention for fifteen days and administrative segregation for 120 days was not atypical treatment in New Jersey prisons and therefore did not implicate a protected liberty interest), and Griffin v. Vaughn, 112 F.3d 703, 706-09 (3d Cir.1997) (administrative detention, which imposed strict restrictions on outside contact *706 and personal conveniences, did not implicate a protected liberty interest).
In this case, the District Court held that Pressley failed to establish that his sentence of 1080 days in disciplinary custody constituted an “atypical and significant hardship” sufficient to trigger a liberty interest under Sandin. In reaching this conclusion, the Court relied on our nonprecedential opinion in which we held that a prisoner who was sentenced to 930 days in disciplinary confinement failed to state facts, or submit evidence, showing that he was subject to conditions that met the Sandin requirement. The District Court compared the length of Pressley’s sentence to the 930-day sentence in that case, and reasoned that “[i]f 930 days does not [constitute] an atypical and significant hardship, a mere five months more does not either.” (Dist. Ct. Feb. 8, 2008 Memorandum and Order 19, 544 F.Supp.2d at 455.)
This analysis does not comport with the fact-specific inquiry required by San-din. As set forth above, to determine whether Pressley endured an atypical and significant hardship, the District Court was required to examine the duration of his disciplinary confinement, and the actual conditions of that confinement, in relation to the hardships endured by other prisoners. See Sandin, 515 U.S. at 486, 115 S.Ct. 2293. Instead, the District Court compared the duration of Pressley’s sentence to that of another prisoner and presumed that the conditions Pressley faced in disciplinary custody were identical to that inmate’s. This analysis did not meet the Sandin standard and we will remand the matter to the District Court to conduct a further inquiry. See Davis v. Barrett, 576 F.3d 129, 134-135 (2d Cir.2009) (remanding matter for further fact-finding on the issue of the actual conditions of prisoner’s confinement in comparison to ordinary prison conditions). Needless to say, we express no opinion on the outcome of that inquiry in this case.
b. The Process that Pressley was Due
In the alternative, the District Court concluded that Pressley received the process he would have been due had he met the Sandin standard. It is well established that “[pjrison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply.” Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Rather, due process prohibits the deprivation of a prisoner’s liberty interest at a disciplinary hearing unless the prisoner is given: (1) an impartial decision-making body; (2) twenty-four hour notice of the charges; (3) an opportunity to call witnesses and present documentary evidence; (4) assistance from a representative; and (5) a written decision explaining the evidence relied upon. Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir.1992). In addition, the disciplinary decision must be supported by at least “some evidence.” Superintendent v. Hill, 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).
Pressley submitted a detailed declaration setting forth the events that form the basis of his claims. He averred that several corrections officers, whom he identifies by name, prepared misconduct reports, which he identifies by date and number, charging him with various offenses, but that he was not served with the reports or the accompanying “inmate version and witness forms.” (DeclJH 4-21.) Pressley further averred that, when he appeared at the hearing on these charges on April 2, 2001, he informed Hearing Officer Ansell that he had not received copies of “any of the misconduct reports, any inmate version or witness forms to marshal the facts, *707 prepare a defense, request witnesses or submit a written version.” (Decl.H 23.)
Pressley contends that the Hearing Officer told him that he would be given copies and returned him to his cell. (Decl.H 24.) According to Pressley:
“I assumed that the hearing would be reschedule^] allowing me time to review the misconduct reports, prepare a defense, request witnesses and submit a written version. Later that day I received six rationales stating that at the above hearing I told [defendant Ansell that I did not want to be at the hearing, that this was witnessed by defendants Wisyauski and McClure, and that the hearings were held in absentee [sic].”
(Decl.HH 25-26.)
At the hearing, Pressley was found guilty of all charges, sentenced to an aggregate of 330 days in disciplinary confinement, and ordered to pay restitution. (Decl.H 27.) He avers that, when Corrections Officer Hawkenbery came to his cell to ask whether he wanted a hearing on the assessments resulting from the misconduct charges, Pressley said that he did. (Decl.HH 28-31.) Nonetheless, he was “denied an assessment hearing because defendant Hawkenbery and Patterson falsely stated that I did not want one and a lein[sic] was placed on my inmate account.” (Decl.H 32.)
Pressley then makes similar statements about a second set of misconduct reports issued against him, (Decl.HH 34-38), and avers that:
“On 7-9-01 a hearing was held on the afore mentioned misconduct reports at which time Defendant Ansell refused to allow Plaintiff his properly requested assistant, to view video evidence and evidence of the names and number of inmates housed on I-C Pod for the purpose of identifying inmates that I sought to testify and was likely to lead to my innocence or mitigate my guilt.”
(Decl.H 39.)
The hearing was held in absentia, at which time he was found guilty of all charges, sentenced to an aggregate of 660 days in disciplinary confinement, and ordered to pay restitution. (Decl.HH 41.) According to Pressley, corrections officers again ignored his explicit requests for a hearing on the assessment. (DecLHH 42-45.) Pressley attests to similar facts regarding a third misconduct hearing, which resulted in a sentence of 120 days in disciplinary confinement and restitution. (DecLHH 48-53.) He contends that he was denied an assessment hearing on these charges as well. (DecLHH 54-57.)
Pressley states that he has been in segregation a total of “seven consecutive years and some odd months,” (Deel.H62), although it is unclear how much of that time is part of the present 1080 day-sentence. Pressley notes that he has pursued administrative appeals on all of the misconduct reports issued against him, and although he did receive a reduction in his sentence for certain other charges, he did not receive a reduction for any of the misconduct charges at issue in this action. (DecLHH 59-60.)
Pressley further avers that, while serving his sentence on these charges, he was “housed on an atmosphere of excessive violence where officers used mental and physical abuse,” (Decl.H 63); was “served with a lower calorie diet than that served to the prison population which resulted in substantial weight loss of approximately 50 pounds,” (Decl.H 65); was “subject to contaminated and unsanitary food service wear resulting in food poisoning type symptoms of vomiting and the runs,” (Decl.H 67); and that there were “occasions where he requested emergency medical and dental, however, the nurses would re *708 fuse to come to the unit to assess his ailments which resulted in undue pain,” (DeclJ 69). Pressley alleges that his complaints about these conditions went ignored.
In support of his declaration, Pressley attached a detailed “Conditions Chart” in which he compared the conditions of prisoners in the general population with those in the Restrictive Housing Unit, as well as those in the Special Management Unit where he was confined. The chart shows the amount of time each population is given for activities like exercise, employment, library access, and education, and describes the procedures for meals, showers, phone calls, visitors, cell cleaning and health care. The chart also includes other aspects of prison life such as access to the commissary, cable, haircuts, and association with others. Pressley also submitted a declaration of disputed facts in which he recites most of the statements in his declaration.
The District Court entered judgment in favor of the defendants on these claims on the ground that Pressley failed to “identify how he was prejudiced in his ability to provide a defense by the alleged failure to receive advance written notice of the charges.” (Dist. Ct. Feb. 8, 2008 Memorandum and Order 23.) However, the court did not address any of Pressley’s other allegations. Given that Pressley set forth several facts that, if proven at trial, might establish a violation of his due process rights under Wolff, and given that the defendants disputed many of these facts, summary judgment was not appropriate.[5]
To the extent that the District Court relied on our decision in Shoats v. Horn, it was error to do so. Shoats held that a prisoner who was placed in administrative confinement for eight years was afforded all the process he was due because an “ ‘informal, nonadversary review’ at which the prisoner has the opportunity to state his views satisfies the requirements of due process.” Id. at 144 (quoting Hewitt v. Helms, 459 U.S. 460, 476, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)). Relying on this case, the District Court found that, even assuming that Pressley did not receive the protections owed to him under Wolff, “he can show no [due process] violation because he received regular periodic reviews by the Program Review Committee (PRC).” (Dist. Ct. Feb. 8, 2008 Memorandum and Order 23.) However, the minimal procedures outlined in Hewitt are sufficient only if the restraint is for administrative — rather than disciplinary — reasons; if the restraint is imposed for disciplinary reasons, the procedures required by Wolff apply. Stevenson v. Carroll, 495 F.3d 62, 70-71 (3d Cir.2007). Therefore, whether Pressley received periodic reviews by the PRC was not relevant to the due process inquiry.
Finally, Pressley challenges the District Court’s entry of summary judgment on his property interest claim. In his amended complaint, Pressley alleged that he was denied due process when the defendants deducted money from his inmate account (as restitution for his alleged destruction of government property) without providing him an opportunity to be
2. Assessment Hearings *709 heard. Specifically, he contends that one of the defendant corrections officers said that if Pressley wished to attend his assessment hearings he had to sign a form. However, he refused to do so because he believed that it was not necessary in order to obtain a hearing. According to the defendants, however, if Pressley wished to attend the hearings, he was required to sign the Notice of Assessments delivered to him in the space provided for this purpose. See DOC Policy 1.7.5 HVIJB. l.d (Dkt # 129-2, p. 2.) Because he did not do so, the hearings proceeded without him.
The District Court recognized that Pressley had a property interest in the funds held in his prison account, see Higgins v. Beyer, 293 F.3d 683, 693 (3d Cir.2002), but entered judgment in favor of the defendants on the ground that Pressley was afforded all the process that he was due because they complied with DOC procedures and gave him an opportunity to request a hearing. While Pressley argues that his oral request should have been sufficient, he does not contest the fact that he refused to sign the requisite form.[6] As a result, there was not a genuine issue as to whether he was afforded an opportunity to attend his assessment hearings in accordance with his rights under the Fourteenth Amendment. Therefore, the District Court properly entered summary judgment in favor of the defendants on this claim.
III.
For the reasons set forth above, we will affirm in part, vacate in part, and remand the matter for further proceedings consistent with this opinion.

. Pressley is presently incarcerated at the State Correctional Institution at Mahanoy.

. In February 2005, the parties consented to having a Magistrate Judge try their case. To avoid confusion, however, we will refer to the Magistrate Judge as the “District Court” when referring to post-February 2005 events.

. In May 2007, after the defendants moved for summary judgment, Pressley filed a motion for relief from judgment in which he challenged the Magistrate Judge's February 4, 2003 order striking his amended complaint. The District Court denied relief on the ground that Pressley had failed to provide an adequate explanation for why he had waited four years to bring this challenge. To the extent that Pressley now seeks review of the District Court's order, we note that he has failed to present any argument in support of his claim. Therefore, he has waived this issue on appeal. See Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir.1993).

. In their brief in support of their motion for summary judgment, the defendants argued that Pressley's due process claim was governed by this Court's decision in Shoats v. Horn, 213 F.3d 140 (3d Cir.2000), which, as discussed below, concerns post-hearing review of administrative — not disciplinary— placements. As a result, the defendants did not specifically dispute Pressley's account of what took place at his disciplinary hearings. That said, the defendants did set forth facts in their Statement of Undisputed Facts that created questions of fact precluding summary judgment.

. Although Pressley argues on appeal that he never received notice of the assessment hearings to begin with, he did not make this argument to the District Court.