*Johnson v. Chappius*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of April, two thousand twenty-five.

Present:
> SUSAN L. CARNEY,
> MICHAEL H. PARK,
> MARIA ARAÚJO KAHN,
> *Circuit Judges.*

---

CHRISTOPHER JOHNSON,

> *Plaintiff-Appellant,*

v.             24-1225

SUPERINTENDENT PAUL CHAPPIUS, JR., GREGORY KELLER, LIEUTENANT TIMOTHY CARROLL, LIEUTENANT MICHAEL RANDALL, LIEUTENANT EDWARD WOLF, SERGEANT STEVEN PACIOREK, SERGEANT CHARLES RUMSMOKE, OFFICER KYLE RAMIREZ,

> *Defendants-Appellees.\**

---

\* The Clerk of Court is respectfully directed to amend the caption accordingly.

FOR PLAINTIFF-APPELLANT:                    BRIAN J. ISAAC, Pollack, Pollack, Isaac &
                                             DeCicco, LLP, New York, NY, and
                                             Cassandra Rohme, Liakas Law, P.C., New
                                             York, NY.

FOR DEFENDANTS-APPELLEES:                    FREDERICK A. BRODIE, Barbara D.
                                             Underwood, Jeffrey W. Lang, *for* Letitia
                                             James, Attorney General, State of New York,
                                             Albany, NY.

Appeal from a judgment of the United States District Court for the Western District of New York (Sinatra, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

While incarcerated at the Elmira Correctional Facility ("Elmira"), Plaintiff-Appellant Christopher Johnson visited the infirmary for an asthma check-up and lower-back pain. An x-ray revealed "contraband in the . . . rectal area which appeared to be a razor type weapon." App'x at 420. The prison placed Johnson on a contraband watch that lasted sixty-one days, until an x-ray confirmed that the "metallic foreign body in the region of the rectum" had passed. *Id*. at 412. Johnson sued Elmira officials ("Defendants") under 42 U.S.C. § 1983, claiming that the contraband watch violated his First, Eighth, and Fourteenth Amendment rights. Accepting the magistrate judge's Report and Recommendation ("R&R"), the district court granted summary judgment to Defendants. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal.

"We review a district court's grant of summary judgment *de novo*." *Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 122 (2d Cir. 2024) (quotation marks omitted). "We uphold a grant of summary judgment only where, construing all the evidence in the light most favorable to the

non-movant and drawing all reasonable inferences in that party's favor, there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." *Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 113 (2d Cir. 2011) (quotation marks omitted).

## I.      Dr. Ott's Testimony

As a threshold matter, Johnson argues that the district court erred by considering testimony from Dr. Ott, Johnson's primary physician at Elmira, even though Defendants' Rule 26 disclosures did not name him.   We disagree.   Defendants stated in their disclosures that they might call personnel identified in Johnson's medical records, which they produced eighteen months before discovery closed.   Dr. Ott's testimony was "highly relevant" to the claims and defenses at issue. *Johnson v. Chappius*, No. 20-CV-604-JLS(HKS), 2023 WL 10947179, at *7 (W.D.N.Y. Nov. 6, 2023), *report and recommendation adopted*, No. 20-CV-604 (JLS), 2024 WL 1486474 (W.D.N.Y. Apr. 5, 2024).   "A district court has wide discretion to impose sanctions . . . under Federal Rule of Civil Procedure 37, and its ruling will be reversed only if it constitutes an abuse of discretion." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir. 2006).   We find no abuse of discretion here.

## II.      Johnson's Eighth Amendment Claim

"In order to establish a violation of his Eighth Amendment rights, an inmate must show (1) a deprivation that is objectively, sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) a sufficiently culpable state of mind on the part of the defendant official, such as deliberate indifference to inmate health or safety." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (quotation marks omitted).   The Eighth Amendment

3

thus has "both objective and subjective components." *Walker v. Schult*, 45 F.4th 598, 610 (2d Cir. 2022).

Here, we can begin and end with the subjective component. Johnson needs to establish that Defendants had "knowledge" of but "disregard[ed]" a "substantial risk of serious harm . . . by failing to take reasonable measures to abate the harm." *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996). And he must do so "in a way that accounts for the precise circumstances of the alleged misconduct and the competing institutional concerns," *Trammell v. Keane*, 338 F.3d 155, 163 (2d Cir. 2003), because "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security," *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

Johnson cannot show deliberate indifference. First, the "disciplinary measures at issue in this case plainly implicate prison safety and discipline." *Trammell*, 338 F.3d at 163. X-ray evidence, including the reviewing notes of three radiologists, made clear that Johnson carried a metallic object resembling a blade in his rectum until at least September 27, 2017. And Johnson had a prior prison-shank incident on his record. *See* App'x at 472. Once x-rays confirmed that Johnson no longer had the weapon, Defendants ended the contraband watch. In short, Defendants kept Johnson on contraband watch for a legitimate penological purpose.[1]

---

[1] That a weapon was not ultimately recovered bears little relevance to our analysis under the subjective prong because our determination depends on what the prison officials knew at the time of the challenged conduct. *See Trammell*, 338 F.3d at 164.

Second, "the record shows that the defendants were mindful of, not indifferent to, his health." *Trammell*, 338 F.3d at 164. Johnson had "regular contact with health professionals and many opportunities to inform them of his medical problems," *id*., and was "under observations 24 hours a day," App'x at 987. "During the sixty-one-day contraband watch, plaintiff was visited by medical staff on all but three days, often more than once a day." *Johnson*, 2023 WL 10947179, at *3. "A correction officer [wa]s assigned to the contraband watch room with a logbook, with a frequency of 15-minute log entries." App'x at 863. Further, Johnson brought his action only against non-medical personnel. Johnson has not established that Defendants had reason to doubt the accuracy of the x-rays or whether he had a weapon in his rectum. Nor has he shown that Defendants were deliberately indifferent in placing him on a liquid diet, given that his treating physician prescribed the diet. And despite being warned repeatedly of the medical dangers, Johnson prolonged the duration of his liquid diet and the contraband watch itself by refusing to undergo x-rays and withholding stool. *See Johnson*, 2023 WL 10947179, at *4-5. In sum, we see no genuine dispute regarding any fact material to Defendants' mental state during the contraband watch.

### III. Johnson's First Amendment Claim

"In order for a prisoner's First Amendment retaliation claim under Section 1983 to survive summary judgment, a prisoner must show (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018) (quotation marks omitted). "[B]ecause prisoner retaliation claims are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters

of general prison administration, we are careful to require non-conclusory allegations." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (quotation marks omitted).

Here, Johnson alleges two instances of retaliation. First, he claims that Defendants issued a misbehavior report on August 17, 2017, to punish him for protesting his confinement and for his religious beliefs. Second, he claims that Defendants issued a misbehavior report on August 22, 2017, to punish him for protesting his confinement. Neither claim survives summary judgment.

On August 17, Johnson had an "altercation" with x-ray technicians. App'x at 83. When a male technician asked for Johnson's name and identification number, Johnson withheld the requested information. And when a female technician asked Johnson to remove his shirt for an x-ray, Johnson refused, citing his religious beliefs. Johnson became "bel[l]igerent," declining to sign for the x-ray and cursing at the male technician. *Id*. at 437. And while being escorted to his room, Johnson continued his "abusive language," threatening to physically attack the officers. *Id*. He received a misbehavior report for his "[d]isturbance," "[v]erbal harassment," and "[t]hreats." *Id*.

Johnson claims that "Sgt. Paciorek, Lt. Randall[,] and Lt. Carroll were aware . . . that the basis for the alleged 'disturbance' was Plaintiff's complaints of continued detention in deplorable conditions." App'x at 30. But when asked how he "know[s] that those individuals were aware of those facts," Johnson admitted "I don't know, sir." *Id*. at 77. Johnson also claims that his "expressions of frustration with the x-ray" reflected that "he was ordered to remove his clothing in front of a woman in violation of his religious beliefs." *Id*. at 1128. But the record shows that his "intransigence" began *before* he was asked to remove his shirt. Appellant's Br. at 62. *See* App'x at 153.

6

On August 22, Johnson received a misbehavior report for "flipping and pushing his metal frame bed around the room" and "dropp[ing] the bed back on its legs[,] causing a loud bang" and "a screeching sound." App'x at 464. Johnson claims that he "protested being deprived of food by making noise." Appellant's Br. at 21. But "[t]o determine whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, courts consider whether an intent to convey a particularized message was present, and whether the likelihood was great that the message would be understood by those who viewed it." *Slattery v. Hochul*, 61 F.4th 278, 291 (2d Cir. 2023) (quotation marks omitted). And so even if Johnson had the requisite intent, it is difficult to see how his audience would "glean" his "particularized message." *Zalewska v. Cnty. of Sullivan*, 316 F.3d 314, 320 (2d Cir. 2003). He did not inform Defendants that he was engaging in expressive conduct. *See* App'x at 523 ("At no time during [the day at issue] did inmate Johnson voice any complaints to me or anyone else about his conditions of confinement."). And Defendants had "[n]o idea" why Johnson was "doing all kind of crazy things with the bed." *Id*. at 187. The district court thus properly granted summary judgment to Defendants on the retaliation claim.

## IV.    Johnson's Fourteenth Amendment Claim

"A prisoner's liberty interest is implicated by prison discipline . . . only if the discipline imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (alteration adopted and quotation marks omitted). In "determining what constitutes an 'atypical and significant' hardship," courts should consider at least three "relevant factors": "(1) the effect of disciplinary action on the length of prison confinement; (2) the extent to which the conditions of the disciplinary segregation

7

differ from other routine prison conditions; and (3) the duration of the disciplinary segregation imposed compared to discretionary confinement." *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir. 1998). We have held that "restrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection, and thus require proof of conditions more onerous than usual." *Davis*, 576 F.3d at 133.

The R&R noted that Johnson "adduce[d] no evidence as to how his confinement compared to other contraband watches at Elmira" and concluded that a reasonable factfinder could not find that Johnson's confinement "gave rise to a liberty interest." *Johnson*, 2023 WL 10947179, at *11. In objecting to that finding, Johnson argued that the R&R "disregards the fact that there was no process whatsoever issued for Plaintiffs confinement." App'x at 1305. But on appeal, Johnson argues for the first time that questions of fact bar summary judgment, as "the record is replete with evidence that the inhumane conditions suffered by plaintiff . . . violated the prison's own policies for contraband confinements" and subjected him to "conditions more onerous than usual." Appellant's Br. at 64.

Under Federal Rule of Civil Procedure 72(b), parties can "serve and file *specific* written objections to the proposed findings and recommendations" of a magistrate judge. Fed. R. Civ. P. 72(b)(2) (emphasis added). But "when a party fails to object timely to a magistrate's recommended decision, it waives any right to further judicial review of that decision." *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022) (quotation marks omitted). Here, Johnson's objection to the R&R alleged a lack of due process but did not claim that his confinement was atypical and significant in light of Elmira's contraband confinement policies. His argument on appeal is thus waived. *See Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis,*

8

*Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010) (finding that an objection to an R&R that "failed to raise the claim now made . . . was, therefore, a waiver").

\* \* \*

We have considered Johnson's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

9